G. Smith
55 Willow Way
Sedona, AZ  86336

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**MEDFORD DIVISION**

| | | |
|---|---|---|
| G. SMITH, | ) | CASE NO: 117CV00712CL |
| | ) | |
| Plaintiff, | ) | SECOND AMENDED COMPLAINT FOR: |
| | ) | |
| | ) | 1) TRESPASS |
| | ) | 2) TRESPASS TO CHATTELS |
| | ) | 3) ABUSE OF PROCESS |
| v. | ) | 4) FALSE IMPRISONMENT |
| | ) | 5) NEGLIGENT MISREPRESENTATION |
| | ) | 6) FRAUDULENT MISREPRESENTATION |
| | ) | 7) DEFAMATION PER SE |
| | ) | 8) CONSPIRACY TO DEFAME |
| JILL LIMERICK, BARBARA WILT and | ) | 9) CONSPIRACY TO DEFAUD |
| JAMES SANSONE | ) | |
| | ) | |
| Defendants. | ) | DEMAND FOR JURY TRIAL |
| | ) | |

**JURISDICTION/VENUE/PARTIES**

1.     Plaintiff G. SMITH ["Plaintiff"] is a resident of Coconino County, Arizona.

2.     Defendant JILL LIMERICK ["Defendant Limerick"] is a resident of Jackson County, Oregon.

3.     Defendant BARBARA WILT ["Defendant Wilt"] is a resident of Sonoma County, California.

4.     Defendant JAMES SANSONE ["Defendant Sansone"] is a resident of Sonoma County, California.

5.	At the time of the facts herein alleged and giving rise to the instant Complaint, Plaintiff resided in Jackson County, Oregon.

6.	The amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.	The Court has diversity jurisdiction under the provisions of 28 U.S.C. § 1332. Jurisdiction and venue are proper in this Court for this action.

**FACTUAL BACKGROUND**

8.	This is an action for damages suffered as a result of injury inflicted in connection with a lease entered into by Plaintiff with Defendant Limerick assisted by Defendants Sansone and Wilt.

9.	On or about May 5th, 2011, after meeting with residents of the premises at issue who invited Plaintiff to join them, Plaintiff met with and signed an agreement with Defendant Limerick, non-resident owner, to lease housing for Plaintiff and Plaintiff's family at 2941 Anderson Creek Road, Talent, Oregon.

10.	Said lease provided for use of a shared kitchen, living room, off-street parking and exclusive use of a wing in the house including rooms and bath, for which Plaintiff prepaid Defendant Limerick a prorated monthly sum as well as a deposit.

11.	Because Plaintiff and Defendant Limerick discussed said matter prior to contracting, Defendant Limerick was aware that since Plaintiff's son was a top high school honors student competing for highly selective college admissions on scholarship, it was critical he follow an uninterrupted program for the remainder of the term.

12.	Less than one full week after moving into the above premises, without prior incident or notice, on or about May 11th, 2011, Plaintiff and family returned home to find they were locked out, the entirety of their possessions gone.

13. When, after spending the night in a hotel, they and a witness returned to the premises the following day as directed by Defendant Limerick to retrieve their possessions, they found that Defendant Limerick or her agent had called the sheriff's office in advance, who were stationed on the property blocking the driveway, baselessly threatening Plaintiff, arresting Plaintiff and family and ordering them off the property.

14. Next, Defendant Limerick told Plaintiff to meet with an individual whom Defendant Limerick said was her lawyer in order to retrieve said possessions, which Plaintiff did on multiple occasions, only to discover said individual, who had repeatedly threatened Plaintiff, was not a lawyer.

15. After Plaintiff hired an Medford attorney who wrote to Defendant Limerick explaining relevant Oregon law and demanding appropriate reparations, Defendant Limerick assured Plaintiff she would pay for Plaintiff's substitute housing as well as make arrangements for the timely return of their possessions, which she had failed to do.

16. Additionally, Defendant Limerick, directly and/or through her agents, engaged in myriad actions, *infra,* intended to seriously damage Plaintiff.

17. With no place to live, Plaintiff's son had to drop out of high school.

18. Several of Plaintiff and Plaintiff's family's possessions -- including a laptop computer and other valuables whose continued absence from Plaintiff's possession as well as subsequent loss due to damages sustained in the moving and storage required as a consequence of Defendant Limerick's actions -- were completely destroyed, having been stored for the better part of a year before Plaintiff could retrieve them due to actions Defendant Limerick had undertaken with others to defraud and defame Plaintiff including but not limited to terrorization from false arrest.

19. In fall of 2015, in the process of related litigation, *infra*, Plaintiff discovered that before moving to Jackson County Defendant Limerick knew, socialized with and had lived for years in the same town as Defendant Wilt.

20. Defendant Wilt, a property owner in Sonoma County, California, profited for years from leasing to Plaintiff and others an unpermitted, hazardously unsafe basement garage in documented violation of dozens of safety building codes as well city and county zoning laws.

21. Defendant Wilt, aided by individuals including but not limited to Defendant Sansone, repeatedly trespassed, harassed, assaulted, converted personal items, abused process and defamed Plaintiff and family in connection with Plaintiff's whistleblowing activity on said illegal unit, for which any lease was *void ab initio* as Defendant Wilt had no legal right either to lease or litigate disputes about the unit.

22. Defendant Sansone, a Santa Rosa, California attorney representing Plaintiff's subsequent lessor who similarly profited for years from leasing a dangerous, illegally converted outbuilding also in violation of multiple city and county zoning codes, was one of a handful of ex-prosecutors whose fees were paid by a third party to assist individuals seeking to defame and defraud Plaintiff.

23. In just one instance of the foregoing, part of a decade-long, still ongoing campaign of injury including but not limited to injury detailed herein, although Defendant Sansone's client of record was never Defendant Wilt, Defendant Sansone unethically "tried" Defendant Wilt's pending matter on the front page of a widely circulated North Bay newspaper by colluding with a local journalist to concoct false statements about Plaintiff's history, character and the litigation at issue, presented as news.

24. Said so-called news was followed up by a year's long series of similarly fact-free false 'reporting' as well as a series of absurdly one-sided television stories passed off as news by a national syndicate.

25. Said fraud, still on the internet, had a devastating effect on Plaintiff and family; in particular, on Plaintiff, who suffered and continues to suffer injury for years including but not limited to being approached by total strangers asking if Plaintiff was that horrible person in the newspaper; being shunned by acquaintances; refused service, medical care and other critical necessities; unable to obtain either employment or housing.

26. Defendant Wilt admitted in a sworn deposition that her lawyer's fees to pursue legal actions against Plaintiff were paid for years by a third party.

27. As Plaintiff subsequently discovered, Defendant Limerick conspired to commit the following unlawful actions with individuals including but not limited to Defendants Wilt and Sansone acting in retaliation, *inter alia*, for Plaintiff's whistleblowing.

### FIRST CLAIM FOR RELIEF
### TRESPASS

28. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 27 above.

29. On or about May 11th, 2011, while Plaintiff was out of town for a day as Defendant Limerick knew, without Plaintiff's knowledge or consent Defendant Limerick trespassed onto Plaintiff's premises and converted all of Plaintiff and family's possessions, taking them to a locked storage area to which Plaintiff had no key, and locked Plaintiff and family out of their home.

30.     By the aforesaid action Defendant Limerick committed trespass, causing Plaintiff as a proximate result of said action to suffer damages in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### TRESPASS TO CHATTELS

31.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 30 above.

32.     On or about May 11, 2011, without Plaintiff's consent or knowledge Defendant Limerick intentionally, illegally entered into Plaintiff's premises and converted all of Plaintiff and family's possessions contained within them, including but not limited to pets, furniture, electronic equipment, computers, books, papers, clothing and kitchen appliances, damaging many items in the process.

33.     By the aforesaid action Defendant Limerick interfered with Plaintiff's use and possession of said items, causing Plaintiff as a proximate result of said action to suffer damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### ABUSE OF PROCESS

34.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 33 above.

35.     On or about May 13, 2011 Defendant Limerick instructed Plaintiff to go to the premises at a certain time in the afternoon where she stated she would meet Plaintiff to return Plaintiff and family's possessions and compensate Plaintiff for motel expenses; that Plaintiff should remain in Plaintiff's car until Defendant Limerick arrived or she would not release their possessions.

36.     Once on the premises, instead of Defendant Limerick, who never arrived, Plaintiff and family found a sheriff from the same branch who several months earlier had sent an officer out to Plaintiff's former Ashland residence to baselessly threaten Plaintiff and family --- over an Oregon civil matter whose plaintiff had at one point handed Plaintiff a motion signed by California attorney Defendant Sansone --- who ordered Plaintiff and family to remain in the car and made it clear he intended to take Plaintiff into custody.

37.     However, Plaintiff's witness pulled into the driveway shortly after Plaintiff, at which point the sheriff decided not to pursue the matter further and ordered Plaintiff and Plaintiff's witness to leave the property.

38.     Because at no point did Plaintiff break any law, Defendant Limerick or her agent attempted to maliciously prosecute Plaintiff by lodging a falsified report with the sheriff's office in advance of Plaintiff's arrival.

39.     By the aforesaid action Defendant Limerick abused process, causing Plaintiff as a proximate result of said action to suffer damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT

40.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 39 above.

41.     Plaintiff and family had a lawful right to enter and be upon the premises at issue on or about May 13, 2011.

42.     However, by use of force and duress – viz., explicit threat that every item they possessed would not be returned unless they remained in their car and did not leave it until Defendant

Limerick appeared, followed by a sheriff's ordering Plaintiff to do same – Defendant Limerick unlawfully forced Plaintiff and family to remain within a bounded area without proper consent.

43.     Plaintiff justifiably feared injury to person or possessions if Plaintiff did not do as Defendant Limerick ordered.

44.     By the aforesaid action Defendant Limerick falsely imprisoned Plaintiff, causing Plaintiff as a proximate result of said action to suffer damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION

45.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 44 above.

46.     Defendant Limerick owed Plaintiff a duty of care to see that no harm came to Plaintiff and family's possessions or persons.

47.     Prior to leasing, Plaintiff and Defendant Limerick discussed the suitability of the premises for Plaintiff and family regarding the environment's stability, quiet, and suitability for a school-aged child; Defendant Limerick assured Plaintiff that her rental and its occupants fit said description.

48.     However, Defendant Limerick's rental did not in fact fit said description, a fact Defendant Limerick knew or should have known yet failed to exercise reasonable care or competence in obtaining or communicating said information to Plaintiff.

49.     Plaintiff justifiably relied on such misrepresentation and proceeded to pay to lease the premises at issue, where subsequently Plaintiff's person and possessions were harmed by Defendant Limerick and her agents.

50.     As a proximate result of justified reliance on Defendant Limerick's negligent misrepresentation, Plaintiff suffered damages in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
### FRAUDULENT MISREPRESENTATION

51.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 50 above.

52.     From 2009 to 2015, Plaintiff was involved in several lawsuits stemming from a common nexus: damages arising out of the wrongdoing of Defendant Wilt in connection with Plaintiff's void lease on Defendant Wilt's illegal unsafe basement unit.

53.     In late 2015, during discovery in a malpractice action against Gary Levinson, Plaintiff's attorney in said matter who failed to show up for jury trial, Plaintiff discovered through written and other evidence that Defendant Limerick knew Defendant Wilt and had acted in concert with Defendant Wilt and others by making false statements and taking other action, *infra*, to defraud Plaintiff, including the following intentional misrepresentations.

54.     On or about the evening of May 11, 2011, when Plaintiff called her to tell her that Plaintiff and family had been locked out of their house, Defendant Limerick, who knew such statement to be false and intended that Plaintiff be harmed by it, told Plaintiff to stay in a motel for which expense she promised to reimburse Plaintiff along with the expense of substitute housing for the remainder of the school year and a return of rental monies paid, a material misrepresentation as Defendant Limerick had no intention of so doing and did not in fact do so.

55.      Plaintiff, without knowledge of said misrepresentation's falsity, justifiably relied upon it and suffered harm by paying out of pocket for motels and enduring severely inadequate

alternative shelter, a consequence constituting proximate cause of significant damage to Plaintiff as stated, *supra*.

56. On or about May 13, 2011 Defendant Limerick, who knew or should have known such statement to be false and intended that Plaintiff be harmed by it, told authorities that because Plaintiff was engaged in unlawful activity, their presence was required on the premises at issue.

57. In fact Plaintiff was not engaged in such activity, yet sheriffs, without knowledge of its falsity, justifiably relied upon said misrepresentation, a material misstatement as it added to lies believed by authorities about Plaintiff to Plaintiff's considerable detriment and because Defendant Limerick intended by it to have Plaintiff arrested and taken into custody.

58. Because of said material misstatement sheriffs arrested Plaintiff and family, a consequence constituting proximate cause of significant damage to Plaintiff.

59. On or about May 13, 2011 Defendant Limerick, who knew such statement to be false and intended that Plaintiff be harmed by it, told Plaintiff to go to the premises at issue and remain in the car while waiting for her to arrive, a material misstatement because Defendant Limerick intended by it to falsely imprison Plaintiff and have Plaintiff arrested and taken into custody.

60. Without knowledge of said statement's falsity, Plaintiff justifiably relied, acted upon and was harmed by said misrepresentation, in fact encountering, in lieu of said misrepresentation, the aforestated events, a consequence constituting proximate cause of significant damage to Plaintiff.

61. On or about May 14, 2011 Defendant Limerick, who knew such statement to be false and intended that Plaintiff be harmed by it, told Plaintiff to meet with an individual Defendant Limerick said was her lawyer, on which misrepresentation, without knowledge of its falsity, Plaintiff justifiably relied, meeting with and suffering harm from such action because said individual, a bully, was in fact not a lawyer.

62. Such misrepresentation was material because said individual, a mutual acquaintance of Defendants Limerick and Wilt belonging to a social group of theirs, repeatedly threatened Plaintiff and family with, *inter alia*, "a world of pain," a consequence constituting proximate cause of significant damage to Plaintiff.

63. On or about May 14, 2011, Defendant Limerick's agent said fictitious lawyer, who knew such statement to be false and intended that Plaintiff be harmed by it, told Plaintiff that Defendant Limerick was acting alone because she knew no one who also knew Plaintiff, when in fact Defendant Limerick's actions, *supra, infra*, were both prompted by and taken in concert with individuals including but not limited to the instant Defendants.

64. Plaintiff, without knowledge of its falsity, justifiably relied on said misrepresentation, material because Plaintiff failed to take action against such conspiracy and thus continued to be harmed by it, a consequence constituting proximate cause of significant damage to Plaintiff.

65. On or about May 11, 2011, Defendant Limerick and/or Defendant Limerick's agents, who knew such statement to be false and intended that Plaintiff be harmed by it, told the worldwide web by placing or causing to be placed on Craigslist a profoundly defamatory statement about Plaintiff and family stating, *inter alia*, they were "scammers" and warning everyone not to rent to them when in fact Plaintiff was an honest responsible single head of household with a masters degree and a law degree earned on scholarship while working fulltime and successfully singlehandedly raising a high-achieving honest child.

66. Said profoundly harmful material misrepresentation caused countless individuals, ignorant of its falsity, to justifiably rely upon it; moreover Plaintiff, unaware of it for days and therefore without knowledge of its existence ergo its falsity, justifiably failed to take action to have it retracted, a consequence constituting proximate cause of significant damage to Plaintiff.

67.     By the aforesaid fraudulent misrepresentations Defendant Limerick harmed Plaintiff, causing Plaintiff as a proximate result of said action to suffer damages in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
### DEFAMATION PER SE

68.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 67 above.

69.     For years Defendant Sansone disseminated, published, continues to publish and disseminate and has caused to be published and disseminated in media including but not limited to television, newspaper and internet untrue statements falsely indicating to the public that Plaintiff is involved in conduct incompatible with the proper conduct of Plaintiff's business, trade or profession.

70.     For years Defendant Sansone disseminated, published, continues to publish and disseminate and has caused to be published and disseminated in media including but not limited to television, newspaper, internet and email statements falsely indicating to the public that Plaintiff is involved in criminal activity.

71.     The aforestated Craigslist ad of May 2011 Defendant Limerick and/or Defendant Limerick's agents published or caused to be published on the Medford, Oregon Craiglist, which very closely followed the wording pattern of Defendant Sansone's defamation *supra*, falsely indicated to the public that Plaintiff was involved in conduct incompatible with the proper conduct of Plaintiff's business, trade or profession as well as involved in criminal activity.

72.     Said false statements, constituting defamation per se, harmed Plaintiff and proximately caused Plaintiff to suffer damages in an amount to be proved at trial.

### EIGHTH CLAIM FOR RELIEF
### CONSPIRACY TO DEFAME

73.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 72 above.

74.     Defendant Limerick was aware that Defendants Wilt and Sansone together along with a group of other individuals had a motive to and intended to defame Plaintiff and Plaintiff's family by, *inter alia*, the aforesaid actions.

75.      Defendant Limerick agreed with Defendants Wilt and Sansone and intended that such defamation be committed.

76.     By the aforesaid action Defendant Limerick harmed Plaintiff and Plaintiff's family, causing Plaintiff as a proximate result of said action to suffer damages in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
### CONSPIRACY TO DEFRAUD

77.     Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 76 above.

78.     Defendant Limerick was aware that Defendants Wilt and Sansone together along with a group of other individuals had a motive to and intended to defraud Plaintiff and Plaintiff's family by, *inter alia*, the aforesaid actions.

79.     Defendant Limerick agreed with Wilt along with said others and intended that such fraud be committed.

80.     By the aforesaid action Defendant Limerick harmed Plaintiff and Plaintiff's family, causing Plaintiff as a proximate result of said action to suffer damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally liable as follows:

1.  For general damages according to proof at trial;
2.  For special damages according to proof;
3.  For prejudgement interest according to proof;
4.  For damages for Plaintiff' other economic and non-economic losses, if any, according to proof;
5.  For costs of litigation and trial according to proof;
6.  For legal assistant fees according to proof;
7.  For attorney fees according to proof; and
8.  For such other and further relief as the Court may deem just and proper.

Dated:  November 19, 2018

_____/s/_____
G. SMITH

# CERTIFICATE OF SERVICE

I hereby certify that on the above-stated date I caused a true and correct copy of the above motion to be served electronically upon:

Douglas McGeary
2 N. Oakdale Ave.
Medford, OR  97501

_____/s/_____
G. Smith